UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case No. 2:17-CV-02459 (VEB)

KORETI TOLOAI,

    Plaintiff,

vs.

NANCY BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

DECISION AND ORDER

## I. INTRODUCTION

In July of 2013, Plaintiff Koreti Toloai applied for Disability Insurance benefits and Supplement Security Income benefits under the Social Security Act. The Commissioner of Social Security denied the applications.

Plaintiff, by and through her attorney, Lawrence D. Rohlfing, Esq. commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 11, 12, 19). On January 5, 2018, this case was referred to the undersigned pursuant to General Order 05-07. (Docket No. 15).

## II. BACKGROUND

Plaintiff applied for benefits on July 10, 2013, alleging disability beginning January 1, 2008. (T at 218-22, 223-30).[1] The applications were denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

On November 19, 2015, a hearing was held before ALJ Edward Graham. (T at 51). Plaintiff appeared with her attorney and testified. (T at 54-60). The ALJ also received testimony from Randi Langford-Hetrick, a vocational expert. (T at 60-64).

On December 16, 2015, the ALJ issued a written decision denying the applications for benefits. (T at 9-26). The ALJ's decision became the

---

[1] Citations to ("T") refer to the administrative record transcript at Docket No. 16.

2

DECISION AND ORDER – TOLOAI v BERRYHILL 2:15-CV-08726-VEB

Commissioner's final decision on January 26, 2017, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

On March 29, 2017, Plaintiff, acting by and through her counsel, filed this action seeking judicial review of the Commissioner's denial of benefits. (Docket No. 1). The Commissioner interposed an Answer on August 29, 2017. (Docket No. 15). The parties filed a Joint Stipulation on November 27, 2017. (Docket No. 17).

After reviewing the pleadings, Joint Stipulation, and administrative record, this Court finds that the Commissioner's decision must be reversed and this case remanded for further proceedings.

### III. DISCUSSION

**A.     Sequential Evaluation Process**

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if any impairments are of such severity that he or she is not only unable to do previous work but cannot,

considering his or her age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment(s) with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the

evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work which was performed in the past. If the claimant is able to perform previous work, he or she is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity (RFC) is considered. If the claimant cannot perform past relevant work, the fifth and final step in the process determines whether he or she is able to perform other work in the national economy in view of his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## B. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**C. Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2008, the alleged onset date, and met the insured status requirements of the Social Security Act through December 31, 2013 (the "date last insured"). (T at 15). The ALJ found that Plaintiff's diabetes, gout, obesity, hypertension, and low back and bilateral hand arthritis were "severe" impairments under the Act. (Tr. 15).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 15).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR § 404.1567 (b), including lifting/carrying 10 pounds frequently and 20 pounds occasionally; sitting about 6 hours in an 8-hour workday; standing/walking about 6 hours in an 8-hour workday; occasionally climbing, balancing, stooping, kneeling, crouching, and crawling; and occasionally performing fine and gross motor manipulation with the upper extremities. (T at 15).

The ALJ concluded that Plaintiff could not perform her past relevant work as a cashier. (T at 20). Considering Plaintiff's age (46 years old on the alleged onset date), education (at least high school), work experience (no past relevant work), and residual functional capacity, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform. (T at 20).

Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act between January 1, 2008 (the alleged onset date) and December 21, 2015 (the date of the decision) and was therefore not entitled to benefits. (T at 21). As noted above, the ALJ's decision became the Commissioner's

8

DECISION AND ORDER – TOLOAI v BERRYHILL 2:15-CV-08726-VEB

final decision when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

**D.     Disputed Issues**

As set forth in the Joint Stipulation (Docket No. 17), Plaintiff offers three (3) main arguments in support of her claim that the Commissioner's decision should be reversed. First, she challenges the ALJ's consideration of environmental limitations. Second, Plaintiff contends that the ALJ did not adequately assess her impairment related to dexterity. Third, she challenges the ALK's step five analysis. This Court will address each argument in turn.

## IV. ANALYSIS

**A.     Environmental Limitation**

During the summer of 2014, Plaintiff sought treatment from Dr. Ravi Menghani, an ophthalmologist. Plaintiff complained of dry, itchy, watery, red eyes, with blurry vision and halos around lights. (T at 512). Dr. Menghani assessed dry eyes, as well as pterygia (a growth on the cornea) of both eyes. (T at 515). He advised Plaintiff to use warm compresses, to administer preservative free artificial tears 4-6 times daily, apply ointments, and increase her diet of fish oil, flaxseed, and foods containing omega-3 fatty acids. (T at 515). Dr. Menghani suggested that

Plaintiff use sunglasses outdoors and humidifiers indoors; he recommended that she avoid having heaters or air conditioners directly in her eyes. (T at 515). Dr. Menghani made similar findings and recommendations in March of 2015. (T at 527).

Plaintiff contends that the ALJ was obliged to consider whether Dr. Menghani's recommendations concerning dry eye symptoms would translate into environmental limitations, which in turn might limit Plaintiff's ability to perform the representative occupations identified by the vocational expert.

This Court finds no reversible error as to this aspect of the ALJ's decision. Although Plaintiff's dry eyes are doubtless a source of pain and frustration, she has not alleged or established any vision loss. Indeed, several eye examinations did not reveal significant visual limitations. (T at 513-14, 517-18, 521-22, 525-26). Moreover, while Plaintiff complained of eye-related symptoms (e.g., dry, itchy, watery eyes), there is no indication that these symptoms created work-related, functional limitations – i.e. that they were so significant that they would impact her ability to perform work.

Notably, Dr. Menghani did not assess any work-related limitations, but rather recommended a series of interventions (using sunglasses outdoors, a humidifier indoors, and avoiding direct airflow from a heater or air conditioner to the eyes) that could be readily accommodated in a work environment. While it would have been

preferable for the ALJ to have addressed this issue more directly, Plaintiff nevertheless bears the burden of proof. This Court finds that Plaintiff has not proven that her dry eye condition imposes limitations sufficiently significant to undermine the ALJ's overall disability determination.

**B.     Dexterity**

In October of 2013, Dr. John Sedgh performed a consultative examination. Dr. Sedgh assessed Plaintiff's motor strength as "4/5 in all extremities." (T at 434). He opined that Plaintiff was limited to occasional gross and fine hand manipulations. (T at 435). Plaintiff complained of tingling at the elbows and in her hands; she described her hands and arms as "lazy and tired." (T 55, 57-58, 311).

Plaintiff argues that the ALJ did not adequately address the concerns related to her dexterity. However, the ALJ incorporated a limitation to occasional fine motor manipulation with the upper extremities into the RFC determination. (T at 15). This is consistent with Dr. Sedgh's assessment. The ALJ incorporated the limitation into the hypothetical posed to the vocational expert (T at 62). The vocational expert testified that a hypothetical claimant with such limitations could perform the representative occupations of usher, crossing guard, information clerk, and counter

11

DECISION AND ORDER – TOLOAI v BERRYHILL 2:15-CV-08726-VEB

1 attendant. (T at 62). The vocational expert testified that her assessment was
2 consistent with the *Dictionary of Occupational Titles* ("DOT").[2]

3 The ALJ has a duty to inquire about "any possible conflict" between the
4 vocational expert's testimony and the DOT. *See* SSR 00-4p; *Massachi v. Astrue*,
5 486 F.3d 1149, 1152-54 (9th Cir. 2007). If there is such a conflict, the ALJ may
6 accept the vocational expert's testimony only if there is "persuasive evidence to
7 support the deviation." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001)
8 (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)).

9 Here, Plaintiff references dexterity ratings set forth in the *Revised Handbook*
10 *for Analyzing Jobs* ("RHAJ") and questions whether she can perform the
11 representative occupations, given that they have average to below average dexterity
12 ratings in the RHAJ.

13 Plaintiff cites no authority for the proposition that an ALJ is obliged to
14 address apparent conflicts between the vocational expert's testimony and the RHAJ.
15 Courts have consistently rejected attempts to require the ALJ to reconcile the
16 vocational expert's testimony with publications other than the DOT. *See Schoux v.*

---

[2] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n. 8 (9th Cir. 2007)(citing 20 C.F.R. § 416.966(d)(1)).

*Colvin*, No. 1:15-cv-01549, 2016 U.S. Dist. LEXIS 75463, at *8-9 (N.D. Cal. June 9, 2016)("Plaintiff has pointed to no authority indicating that an ALJ is required to inquire whether a vocational expert's testimony … is consistent with … any source other than the DOT."); *see also Walker v. Berryhill*, No. CV 16-01040, 2017 U.S. Dist. LEXIS 42524, at *7-*11 (C.D. Cal. Mar. 23, 2017)(collecting cases). There are two primary justifications for this limitation on the scope of the ALJ's inquiry. First, the primacy of the DOT is well-established. *Walker*, 2017 U.S. Dist. LEXIS 42524, at *10 (citing SSR 00-4p). Second, concerns of administrative economy and efficiency weigh against requiring the ALJ to scour a conceivably limitless series of sources and publications for potential conflicts with the vocational expert's testimony. *Id.* at *10-11.

As such, this Court declines to find that the ALJ was obliged to explore arguable conflicts between the vocational expert's testimony and authorities other than the DOT.

C. **Step Five Analysis**

At step five of the sequential evaluation, the burden is on the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). If a claimant cannot

return to his previous job, the Commissioner must identify specific jobs existing in substantial numbers in the national economy that the claimant can perform. See *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995).

The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995).

Here, the ALJ concluded that Plaintiff could perform work that exists in significant numbers in the national economy, citing four representative occupations: usher, crossing guard, information clerk, and counter attendant. (T at 20-21). This conclusion was based on the vocational expert's testimony. (T at 21).

This Court finds that the ALJ's step five analysis must be revisited on remand.

First, the ALJ's finding that Plaintiff could perform the information clerk position is flawed. Although the vocational expert initially identified that occupation as one a hypothetical claimant with Plaintiff's RFC could perform, on cross-examination by Plaintiff's counsel, the vocational expert appeared to concede that the position required frequent handling, which would be precluded by Plaintiff's limitation to occasional fine and gross manipulation with the upper extremities. (T at 63).

Likewise, Plaintiff notes, and the Commissioner concedes, the DOT description for the counter attendant position indicates that it requires frequent handling. DOT 237.367-018. The ALJ did not identify or resolve this apparent conflict between the DOT and the vocational expert's testimony.

The Commissioner contends that the ALJ's errors regarding the counter attendant and information clerk positions are harmless because the ALJ identified two other positions (usher and crossing guard) that Plaintiff could perform. However, Plaintiff offers evidence calling into question whether those positions, which are typically performed on a part-time basis, actually exist in significant numbers in the national economy. The Commissioner responds that this Court should reject Plaintiff's attempt to offer new evidence and argues that this Court should not accept that evidence as "more reliable" than the evidence relied upon by the ALJ.

This Court declines to pass on the question of which evidence is more reliable, as beyond the scope of its review here. However, this Court is tasked with determining whether the ALJ's decision is supported by "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Here, there is ample reason to question the adequacy of the evidence and reasoning. The vocational expert appears to have

erred in identifying two positions that would be precluded for a claimant with Plaintiff's limitations according to the DOT descriptions. The evidence cited by counsel, which not necessarily dispositive, at least calls into question the adequacy of the vocational expert's analysis of the availability of the remaining positions. Although it would certainly have been preferable for Plaintiff's counsel to have queried the vocational expert regarding this evidence during the hearing, this Court declines the Commissioner's assertion that counsel waived the argument, particularly because it concerns the step five analysis, where the Commissioner bears the burden. *See Clark v. Colvin*, No. 2-14-cv-01586, 2015 U.S. Dist. LEXIS 127159, at *13-14 (E.D. Cal. Sep't 21, 2015).

Accordingly, the ALJ's step five analysis must be revisited on remand.

**D.  Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, this Court finds that remand for further proceedings is warranted. The ALJ's step five analysis was flawed for the reasons stated above. It is not clear from the record that Plaintiff is disabled, but there is a material outstanding issue to be resolved on remand. A remand for further proceedings is therefore the right remedy.

## V. ORDERS

IT IS THEREFORE ORDERED that:

Judgment be entered REVERSING the Commissioner's decision and REMANDING this action for further proceedings consistent with this Decision and Order, and it is further ORDERED that

The Clerk of the Court file this Decision and Order, serve copies upon counsel for the parties, and CLOSE this case without prejudice to a timely application for attorneys' fees and costs.

DATED this 14th day of May, 2018,

/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – TOLOAI v BERRYHILL 2:15-CV-08726-VEB